UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
v.                                 )          No. 6:08-CR-98-GFVT-HAI-2
                                   )
ZANE W. VANARSDALE,                )          RECOMMENDED DISPOSITION
                                   )
            Defendant.             )
                                   )
                                   )

                        ***  ***  ***  ***

The Court, on referral (D.E. 47), considers reported violations of supervised release conditions by Defendant Zane W. Vanarsdale. District Judge Van Tatenhove entered a judgment against Defendant on March 23, 2009, for conspiring to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. D.E. 39. Defendant was sentenced to thirty-three months of imprisonment followed by four years of supervised release. *Id.* Defendant began his supervised release term on December 22, 2010.

On September 21, 2012, the United States Probation Office ("USPO") submitted a request to District Judge Van Tatenhove to modify Defendant's conditions of release following his conviction for "Reckless Driving (Had Been Drinking)." The USPO requested 20 hours of community service, which Judge Van Tatenhove approved. D.E. 10.

On June 19, 2014, the USPO issued a Supervised Release Violation Report, and secured a warrant from Judge Van Tatenhove on June 25, 2014. The Report charges Defendant, in

Violations #1 and #3, with violating Standard Condition #7, which provides that "[t]he defendant . . . shall not purchase, possess, use distribute, or administer any controlled substance . . . except as prescribed by a physician." The Report also charges Defendant, in Violations #2 and #4, with violating the condition of his supervision which provides that "[t]he defendant shall not commit another federal, state, or local crime." Finally, the Report charges that Defendant violated Standard Condition #9, which states that "[t]he defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer."

Specifically, the Report states that, in mid-May of 2014, USP Officer Rains attempted to contact Defendant regarding his unfulfilled community service hours, but it was difficult to reach him. Defendant was finally contacted on May 16, 2014, after failing to report as directed on May 15, 2014. After being advised that Officer Rains would travel to Defendant's location that afternoon, Defendant verbally acknowledged methamphetamine use on four or five occasions, with his last use occurring on May 15, 2014. On May 19, 2014, Defendant reported to the USPO as instructed and provided a urine specimen. This specimen was sealed in his presence and sent to the laboratory, which reported that the specimen tested positively for methamphetamine/amphetamine. The Report reasons that, as methamphetamine is a Schedule II Controlled Substance and Defendant has a prior drug conviction, pursuant to Sixth Circuit case law holding that the use of a controlled substance is the equivalent of possessing the controlled substance, possession of methamphetamine constitutes a violation of 21 U.S.C. § 844(a), a Class E Felony. This conduct forms the basis of Violations #1 and #2.

Defendant also related at that time that he was currently in a relationship with a convicted felon and active substance abuser, and that his use of methamphetamine was related to the

presence of this person (identified at the hearing as Brett King) in his life. He also stated that he had traveled to Atlanta, Georgia, with King without the USPO's authorization. Officer Rains met again with Defendant on June 9, 2014, at which time Defendant signed a proposed modification of his supervised release which would have imposed ten weekends of intermittent confinement. However, as discussed below, Defendant continued to engage in noncompliant behavior following this June 9, 2014 visit, and thus the proposed modification was not submitted to the Court.

The Report further states on June 18, 2014, Officer Rains and Officer O'Brien conducted a home visit at Defendant's residence, at which time he submitted a urine specimen for instant testing. The specimen tested positively for the present for methamphetamine/amphetamine. Defendant verbally acknowledged the use of methamphetamine on June 16, 2014. Again, the Report reasons that, as methamphetamine is a Schedule II Controlled Substance and Defendant has a prior drug conviction, pursuant to Sixth Circuit case law holding that the use of a controlled substance is the equivalent of possessing the controlled substance, possession of methamphetamine constitutes a violation of 21 U.S.C. § 844(a), a Class E Felony. This conduct forms the basis of Violations #3 and #4.

Finally, the Report charges that Defendant's May 16, 2014 verbal acknowledgment of his relationship with a convicted felon and active substance abuser constitutes a violation of Standard Condition #9. This is the basis for Violation #5.

The Court conducted an initial appearance pursuant to Rule 32.1 on June 30, 2014, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 46. At the initial appearance, the United States made an oral motion for interim detention, and Defendant did not object. *Id.* The Court found that detention was

appropriate as Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id.*

At the final hearing on July 3, 2014, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 48. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the charged violations. *Id.* Further, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations, as described in the Report. *Id.* In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violations #1-5 under the standard of § 3583(e). The United States recommended revocation and six months of imprisonment with 12 months of supervised release to follow. Defendant recommended 10 to 20 weekends of intermittent confinement, followed by 12 months of supervised release to follow with mandatory substance abuse treatment.

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's § 841 conviction was for a Class B felony. *See* 21 U.S.C. § 841; 18 U.S.C. § 3559. For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United*

States v. Perez-Arellano, 212 F. App'x. 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1, #3, and #5,[1] and Grade B violations with respect to Violations #2 and #4. Given Defendant's criminal history category of I (the category at the time of the conviction in this District) and a Grade B violation, see U.S.S.G. § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is 4-10 months.

Congress does **mandate** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. See 18 U.S.C. § 3583(g)(1); see also Crace, 207 F.3d at 836 (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of § 3583(g)(1). See United States v. Metcalf, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. See 18 U.S.C. § 3583(d); Crace, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of

---

[1] Although the Report classifies Violation #5 as a Grade B violation, this appears to be a typo. Instead, a violation of Standard Condition #9 constitutes a Grade C violation pursuant to U.S.S.G. § 7B1.1(a).

supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Defendant did not argue for application of this exception.

Having reviewed and considered the nature and circumstances of the offense, Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public, the Court finds that Defendant's violative behavior is directly related to his relationship with King. Defendant was successful on release for three years, but then spiraled downward quickly after becoming involved with King. The Presentence Investigation Report reveals that, similarly, Defendant's involvement in the underlying offense was related to a romantic relationship with his co-defendant, who reportedly pressured Defendant into dealing drugs. While the Court fully recognizes that Defendant is entirely responsible for his behavior, it is clear that Defendant can be successful on release in the absence of such negative influences. Indeed, Defendant's criminal history reflects a few charges of unknown disposition in 1992 and 1997, but a lack of any criminal activity when such negative influences are removed.

Thus, the Court's recommended sentence is designed to remove those influences. Additionally, the need to provide Defendant with education, training, or treatment is significant. Defendant requested substance abuse treatment, and given his long history of drug abuse, the Court concurs that Defendant could benefit from substance abuse treatment. The Court is hopeful that Defendant's sincere interest in recovery, as evidenced by his persuasive statement in mitigation to the Court, will help him absorb the skills offered in substance abuse treatment and apply those skills to successful completion of his supervised release.

By violating the conditions of his supervised release, Defendant has breached the trust of the Court and the public. The nature of supervised release includes trust placed in Defendant to

adhere to the conditions of his release. While it is to Defendant's credit that he did not violate his conditions for over three years before the instant violations, Defendant did commit multiple breaches of his supervised release in a short period of time. However, Defendant's long period of initial success on supervised release provides the Court reason to think that Defendant could be successful on supervised release following revocation if conditions are imposed to remove him from the influence of King and avoid similar relationships in the future. The Court finds that revocation, 20 weekends of intermittent confinement, and 12 months of supervised release with immediate mandatory substance abuse treatment, weekly drug testing during Defendant's first month of reimposed supervised release, no contact with Brett King, and that he report any attempted contact by Brett King with him to the USPO immediately, is sufficient but not greater than necessary to meet the section 3353(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

The Court must also consider the need to avoid unwarranted disparities in sentencing among similarly situated Defendants. A term of 20 weekends of intermittent confinement, which is equivalent to just over six weeks of incarceration, constitutes a 10-week downward departure from Defendant's U.S. Sentencing Guidelines range. The Court "'must adequately explain the chosen sentence—including an explanation of *any deviation* from the Guidelines range.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (emphasis in original) (quoting *Gall v. United State*, 552 U.S. 38, 51 (2007)). The Court is also required to "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id.* (quoting *Gall*, 552 U.S. at 50). Finally, the Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (emphasis in original) (quoting 18 U.S.C. § 3553(c)(2)).

Defendant is not similarly situated to other defendants who commit similar violations. The original offense conduct and the supervised release violations show that he is unusually susceptible to bad decision-making in the context of his romantic relationships, and his choice of partner has led to criminal conduct on several occasions. Given that Defendant has a standing job offer and was successful for three years on release, the Court believes that conditions can be crafted that will remove those influences and sufficiently guard against Defendant from engaging in similar behavior in the future while on supervised release. On June 9, 2014, Officer Rains offered Defendant the opportunity to serve 10 weekends of intermittent confinement, and that did not get through to Defendant. The Court hopes that doubling that amount to 20 weekends may serve to better get Defendant's attention.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Defendant's conviction under 21 U.S.C. § 841 carried no maximum term of supervised release. Under section 3583(h), the maximum term at this point remains life. 18 U.S.C. § 3583(h). The Court recommends that a term of 12 months of supervised release, constituting a 6-month extension of his remaining supervised release term, be imposed following revocation because Defendant is clearly in need of extended close supervision, particularly as it relates to substance abuse treatment. The Court is also hopeful that Defendant's term of incarceration will encourage him to take the conditions of his supervised release seriously, and that he will make the most of his time on supervised release.

Based on the foregoing, the Court **RECOMMENDS** revocation, with intermittent confinement for a term of 20 weekends (from 6:00 p.m. each Friday to 6:00 p.m. each Sunday at the Fayette County Detention Center), and supervised release for 12 months under the conditions originally imposed by Judge Van Tatenhove, with the following modifications:

(1) that Defendant immediately enroll in, and successfully complete, substance abuse treatment;

(2) that Defendant submit to weekly drug testing during Defendant's first month of reimposed supervised release;

(3) that Defendant have no contact with Brett King; and

(4) that Defendant report any attempted contact by Brett King with him to the USPO immediately.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

 The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 7th day of July, 2014.



Signed By:

*Hanly A. Ingram*

United States Magistrate Judge